The first case today is 14-2065, United States v. Ricardo Amaro-Santiago. Good morning, Your Honors. If I may, Your Honors, in this case, Mr. Amaro, who is the defendant, he posed defense during trial, which was a very strong defense. It was a duress defense. In this case, the important thing is, it's not what happened really during the case, during trial, when both parties were presenting evidence, but afterwards. In this case, the response includes an argument to the appellant's duress defense in two parts. First, there were two prosecutors. The first one was commenting on the reasonable doubt defense and also afterwards in the rebuttal. The other prosecutor argued as to the defense itself when he stated that the defendant had to prove that there was a duress defense in which the threat was immediate and it was present, and that was a misstatement of law. The defense at that moment raised an objection, and the objection was preserved. He also raised a mistrial request, which was also denied. The court at that moment said that if an instruction was given, the problem would be solved. The problem with this case, Your Honors, is that the jury was at a given time deadlocked, and that's another issue that was raised in the appeal, and I will discuss that later. But when this happened, the court was discussing the issue with the attorneys, and he said to the prosecutor to please clarify what he had been saying as to the misstatement of law, and the prosecutor kept on going, and what really happened was that he repeated what he already said, so he didn't clarify to the jury the misstatement of law. Afterwards, the instruction was given. It was not given the same day. But wasn't that by agreement of counsel that the jury was tired and it should be allowed to go home, and that the curative instruction would be given in the morning? Yes, Your Honor, but at first it was the court that wanted to give the instruction, and then afterwards, during the discussion, the defense counsel said that if he did that, it could be taken by the jury that it was his fault that they were being kept in court, and they had been already deliberating for almost 10 hours or so. But still, Your Honor, it was what we have to look to as to this misstatement of law is how improper it was and how damaging it was for the defense. It was well thought what they were going to do. First, they divided the closing statements into parts. You're saying from that that these were deliberate misstatements by the government? What is the point of the fact that there were two prosecutors? The point is that they focused on the defense of duress, which the defendant was bringing from the start during trial. He testified himself. He also put up two witnesses as to his reputation, and even the judge during trial stated that he was believable when the defendant was testifying and that they had a very strong defense. So that put up all the flags, the red flags to the prosecution, and what they did was they divided up the closing statements. First, there was a lady prosecutor, and then the gentleman, and then there was for the government. And even so, there was another misstatement. There was another problem with the closing statement by the lady prosecutor when she stated that the reasonable doubt standard was kind of shifting as to that the defendant had to prove his innocence when she mentioned that example of the gas station, which the premise of that is all wrong because what she stated was if you go to a gas station, you know that there's going to be selling gas over there and you have to put it in your car. And that's the presumption is that already, already they're selling gas. So in this case, as an example, she was telling the jury, you know, this person, defendant Amado, is already guilty. He has to prove that he's innocent. And that was part of the defense. And so what she did with that statement was that she shifted the burden to the defendant and not to the government. So that was another problem. And there was still another one, Your Honor, when the yelling charge was given, the judge told the jury that they had a constitutional obligation to reach a verdict. So that would put some pressure on the juries in Puerto Rico. And the other thing that he said was that if you don't reach a verdict in this case, the case is going to still be open. And that implied that if they didn't do their job, and then the case would be open and there would be another trial. That's not really true, Your Honor. That depends on what the prosecutor wants to do. So that was also misleading us to the jury and to the duties as jurors. So if you take all that into account, there was a big problem, not during the trial itself, but afterwards. Because the prosecutors knew that the defense was strong, that the defendant was believable, and his witnesses were believable. Also there was also an issue of a Rule 29 issue here, because the government's proof was not really that strong. This person, Amaro, the defendant, only went once to this apartment, which was all set up. But this was entirely videotaped, wasn't it? It was. And was the jury shown the videotape? Oh, yes. And they requested a video quite a few times when there were deliberations, yes. Did they request it after the Allentart? Excuse me? Did they request it after the Allentart? After the Allentart had been given, and then they went back to deliberate. Did they request the video again? I'm not sure. I don't think so. I think they requested the videos before the Allentart. And that's the big problem also. Because it shows that they were pressured to get a verdict. How long did they deliberate after the Allentart? I think it was a few more hours, I believe. I think it was before the Allentart, I think it was about ten hours. And afterwards, about two more hours or so. And did they ask for anything during those post-Allentart deliberations? I don't believe so, Your Honor. I'm not really sure about that, but I don't think so. I think that everything that they requested was before the Allentart. When the jury requested to see the videotape again, was it immediately after they went into deliberations? Was it just before? Or alternatively was it eight or nine hours later? No, I think there were deliberations for a few hours, and then they requested the videos twice, I believe. And also they requested at a given time the defense instruction by writing. So it was really something that comes into your mind that the deadlock was probably more than one juror. We don't know that exactly, but when they gave the judge the note saying that we're deadlocked and there's nothing that can change the juror's mind at this time, then came in the Allentart. But it's not the thing that the Allentart came in, Your Honor. That's common practice. It's how it came in. It's how it was given to them. They were told that they had a constitutional duty to reach a verdict. Well, he said they had a constitutional duty to try. To try, exactly. But, I mean, these are lay people, you know. There was no objection to that. No, there was no objection to the Allentart per se. But afterwards, immediately after the Allentart was given, the defense also again raised the mistrial. The mistrial here was raised quite a few times. And so what precisely is wrong with telling a jury that they have a constitutional duty to try to reach a verdict? That really is not that wrong, Your Honor. The thing is that if you take it as a whole, firstly, it said that they have a constitutional obligation to reach a verdict. And afterwards, on that same sentence probably, they're told that if they don't reach a verdict, the case is going to be left open. That if you're a layperson, if you don't know anything about law, and you're being told by a judge that you have a constitutional duty to try to reach a verdict, that's one thing. But then the next one, if you don't do that, if you don't perform your duty, then this case is going to be open. And this was a seven-day trial case. And there were two prosecutors and one attorney, one defense attorney. So a lot of energy and money was put into this. What would, under your scenario of not telling the jury that the case would remain unresolved, what would the jury think if they don't reach a verdict? Aren't they going to think the case remains unresolved? Well, if the case is unresolved, they might think that another trial is going to have to commence, another trial has to be... And isn't that all that the judge told them, that that's precisely what's going to happen? Well, the thing is, no, I don't think that the judge told them that, really. I think that he said that it's going to be left open. He said it will remain open and another jury will have to... Oh, exactly. And another jury will have to, yes. And that's pressure, because they were already told that a lot of energy and money was put into this case. So what they're being told is, you know, you have a constitutional obligation to reach a verdict. If you don't do so, then we have to start all over. And then we're going to spend money and we're going to spend time and energy. Now, are you asking for a flat rule, that a statement like that not be included in an Allen charge? I'm trying to figure out what you think is the... Especially, not as to the constitutional duty of the jurors. I mean, that's normal. But as to the other part, in which, you know, if you don't do your job, that's what is being said. If you don't do your job, we're going to have to start all over again. I think that's incorrect. Well, I thought it's not just we have to start all over again. I thought it's particularly and another jury will have to be selected to try the case. That's not in our pattern jury instruction. Exactly. That is not. And that's a big problem. And the problem you have with it is that it's not clear that another jury would have to be selected. So it's just misleading to tell the jury that the consequence will inevitably be another jury. Exactly. But anything can happen. Anything can happen. It depends on the prosecutors. I'm sorry. I misunderstood your argument then. You're making an argument that it's misleading. That is different from an argument that it's undue pressure on the jurors to reach a verdict. Now, which is it? Well, it could be both, Your Honor. Because first, they're told that they have a constitutional obligation to reach a verdict. To try to reach a verdict. By itself, that's some pressure on people. But I know it's legal, but it's some pressure. But then after that, they're told that if they don't do that, if they don't do their And that's misleading also, because it really doesn't have to be that way. But if you take into account both, a combination of both statements, then we have a very big problem. Did the government ask for this instruction, or did the district court provide it? The district court provided the Allen charge, and neither party objected, Your Honor. Correct. I think my time is over. Yes, thank you. Thank you very much. Ms. Goodman. Thank you, Your Honors. Good morning. I'd like to address the Allen charge. Please. As the court noted, the wording of the Allen charge is reviewed for plain error. And that means that the defendant has the obligation both to show a plain, clear, or obvious error, and an effect on his substantial rights. Meaning that this court has said that the Allen charge itself coerced the verdict. And so if I could go to the substantial rights prong first, the defendant can't meet that burden in this case. And I'd like to just clarify very briefly the record on this, which appears at pages 1386 and 1387 of the appendix. The judge delivered his Allen charge, and the jury recessed at 9, 12 p.m. The judge then said at 10.07, oh, I've got another note from the jury. They want to watch the video again. And the judge commented, so it's obvious this jury is continuing to deliberate. They want to watch the video. The jurors then were allowed to watch the video again, and they continued to deliberate until after midnight. It was, I believe, 12.15, the judge said on the morning. And so in terms of the time that elapsed, which was approximately three hours, in terms of the jury's obvious not saying, oh, we've got to return a verdict, we've got, you know, the judge told us, so let's just do it, they obviously continued to deliberate, as the judge found. Even if the court found a plain, clear, or obvious error in the wording of the Allen charge, there was no effect on the defendant's substance. I'm having trouble understanding that argument. I mean, suppose the judge said to them, unless you return a verdict, you'll all be executed. And then they left, and they asked to see the video again. I don't think we would find that the mere fact that they asked to see the video meant that that Allen charge didn't coerce them into getting a verdict.  Well, Your Honors, two responses. One is that obviously you look at the charge itself, and you weigh that in the deciding whether it coerced the verdict, and the charge Your Honor has proposed would be quite coercive. And I'll go back to that part in a minute. But also this court, in its decisions, has looked very carefully at the amount of time that's elapsed, and that's a strong factor in some cases. There's a case cited in our brief. The name's escaping me right this minute. But the court found plain error and then said, well, but look at the time. The jury continued to deliberate. That negated any coercion. But if I can also go back to the charge itself, this court has never found plain error. When the district court did as it did here and carefully gave all three parts of the required elements this court has said are necessary to prevent an Allen charge from being coercive. And the most important thing the court said, and it said this very clearly. This was the last thing the jury heard almost before it went back to deliberate again. And it said, if you cannot agree, it is your right to fail to agree. There's no reason to think on a plain error standard that the jury didn't listen to that. But do we have a case in which there's this extra thing added by the court which just happens not to be true, which is that if you fail to reach a verdict, a new jury will have to be selected? Well, Your Honor, you don't have a case that's exactly like that. So why doesn't that change it? Because the problem is that last sentence that you read doesn't really negate, if there is a problem, the problem that flows from the sentence saying, and when you fail to reach a verdict, a new jury is going to have to be selected with all the time and expense. Well, that may be misleading. The court just said another jury will have to be selected to try the case. That's true, the defendant could plead guilty. But that may be incorrect, but it's hard to see how it's coercive. Well, it's coercive if you put it together with the prior statement in the charge, which is, look at how much time and effort went into this, look how much expense went into it. A natural implication of the last sentence is, so if you don't give a verdict, someone else is going to have to go through and put all the same time and effort in, which is a pressure in common, isn't it? Well, Your Honor, the question before this court is whether the entire charge, read in its entirety with all the required elements, was coercive. And the judge did say the trial, he emphasized he wasn't talking about money. He told the judge that, yes, a lot of time has gone into this case. When this court has found coercion in previous cases, it's because the judge has said things like, oh, it's Friday, or some jury is going to have to reach a verdict, or we really don't want to have to sit here again. This is an easy case. The judge here said nothing like that. He emphasized the seriousness of the case, how important it was, and he just told the jury. But he also emphasized how time-consuming and expensive it was. He didn't say, he said expensive, not in money. So he said in time. Yes, he did. That's right. And now he's saying, and if you don't come to a verdict, all that time is going to have to be done. You could easily read the charge to be saying. Now a new jury is going to have to be selected. That's on you, right? Well, you have to read the charge, though, Your Honor. That's these two paragraphs at the beginning. You have to read the charge and what the judge told the jury for the next four or five pages. It's not the next four or five pages that's the problem. I guess the thing that's of some concern is we have a sort of good housekeeping stamp of approval on an Allen charge. Yes. And the court can give that, and then we've got no issue. This court apparently decided that it didn't quite like the pre-approved Allen charge. It felt the need to ad lib with these two introductory paragraphs, which are designed at telling the jury, increasing the stakes of there not being a decision. It seems like it's expressly intended to put a little extra pressure on the jury. Well, Your Honor, two responses. One is that these statements don't really add much at all to what this court, I mean, the very next paragraph when the court goes into the approved charge is about the future jury and how a future jury would be selected, and the future jury would be just like you all. And then the court reminds the jury. That's a rather different point. As I read the approved charge, it says any future jury, so it doesn't say that there would be one. And then it's just saying don't think that there's some other group of people who would be better positioned than you to make this decision. You're as good in a position as they will be. But that's not pressuring. That's just you're no differently situated than some other jury to decide it. When you combine it with and it's expensive to time consuming to do this and another one will have to be selected, the worry is now you're changing it from just advising them that you're no better positioned than the next people who might have to decide this to, and if you don't decide it, we're going to have to get another group of people who are going to have to go through this whole thing. That's the problem to me. Well, Your Honor, the court did remind the jury. The jurors were aware that the case might be retried. That's right. And they were certainly aware from sitting through it that it had been a long trial. But the question before this court is given the very careful, the court included all of the elements, is that additional charge, the additional statements, which largely seem to confirm what's here, that what's already in the approved charge, whether that's so coercive that in light of the jury's deliberation for three hours with the juries looking at the video again, whether those additional statements somehow make this approved charge so clearly or obviously wrong. Counsel, if we were to write an opinion that said we discourage this sort of ad libbing, would the government object? No, we would be very happy with that. There was no reason for the court to include this, and it just makes us all, yes, that would be something we would appreciate. But again, we don't think in this case that given the specific context of the entire charge and the evidence that the jury deliberated afterwards that the defendant has shown reversible plain error. I'd be happy to address the prosecutorial misconduct claims. Yes, I would like to hear something about that. I don't think the reference to, I don't have a chainsaw next to me at counsel table. There was no immediate threat of this guy having his limbs cut off. There was no chainsaw present at the scene of the drug transaction. The district court thought it was fine, or at least not prejudicial. I didn't think it was fine. What was going on there? Well, Your Honor, the defendant argued. His defense was duress. I mean, he conceded he was on the video, you know, committing the crime. And he argued that I was, let me be sure I can get the language exactly right. He argued that the drug dealer, the supposed drug dealer, had threatened him with death. This was defense counsel's argument. Because I have a chainsaw and I'm going to cut you in pieces. That's what he said at page 1243 of the appendix. So the prosecutor in rebuttal noted the specific elements that the court had instructed on and responded to each of them. And on the immediacy, his argument was, look, based on this evidence, this is what he said the threat was. I asked him, did he see a chainsaw, and he said no. And then the prosecutor, I mean, this is not a case where there's somebody shifting the burden. Everyone agrees. Defendant has the burden to show each of the elements of the duress defense. And so as the district court found, we think this was permissible argument. But if I can just cut to the chase of why it wasn't reversible error, in addition to the prosecutor's clarification, we could argue about that, there was a curative instruction that could not have been more clear, more comprehensive, more thorough. I mean, it was such a strong instruction, and the jury, the judge read the jury of the duress defense again, and then he quoted the exact statement, and he told the jurors, was not part of the court's duress instruction, cannot be considered by the jury as an instruction, nor as what the law is. That is not the law. That was an incorrect statement. This court has repeatedly held that instructions of that nature, or even instructions that aren't as strong as that, are sufficient to negate any possibility of prejudice. So the jury, that was basically the last thing the jury heard before they went to deliberate. They got the duress instruction repeatedly. They had it read to them. They asked for a copy. There was no possible confusion in the jury's mind about whether this was part of the law on duress. I would think the government would not like to be in a situation where a court instructs that what the prosecutor has just said is incorrect and is not the law. It may have taken care of the problem, but from my point of view, the prosecutor probably should not have said anything of the sort. Well, Your Honor, just to defend the prosecutor, what he was attempting to do, and he said this, and the court found that it was permissible jury argument later on, is simply to make an argument based on the evidence. So it may have been misstated. I mean, perhaps he should have said, you should not find that the threat was immediate because the evidence doesn't support that. I mean, he could have been phrased differently, but it was certainly not deliberate, and if misconduct, if misstated, was clearly corrected by the district court. I would also be happy to address the comment on reasonable doubt, and just to point out that the argument that's made in this court, that somehow this shifted the burden of proof, was not raised in the district court. The prosecutor, so it's reviewed for plain error. That objection was not raised. The prosecutor did not mention anything about the burden of proof, or that the defendant had to somehow present evidence, and the court gave very clear, comprehensive instructions on the presumption of innocence and the burden of proof, and repeatedly. Just on the merits of the instruction, or the statement itself, the analogy itself, I couldn't tell from your brief whether you think the analogy is an appropriate way of describing the reasonable doubt standard or not. Well, Your Honor, I think it actually makes the reasonable doubt standard even higher. Great. Could you just explain how? Well, when I go to the, this is, when one goes to the gas station, one typically is absolutely, there's no doubt that it's gas that you're getting, and if anything, that placed a higher burden on the government, but the, it was basically an illustration of how circumstantial proof can lead to a verdict beyond a reasonable doubt. We'd ask that the judgment be affirmed. Thank you. Thank you. Thank you, counsel.